No. 880    December 4, 2024    619

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DERRICK JAMES TRIPP,
*Defendant-Appellant.*

Washington County Circuit Court
21CR61872; A181065

Brandon M. Thompson, Judge.

Submitted October 23, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Derrick James Tripp filed the reply brief *pro se*.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this criminal proceeding, defendant was convicted of felony driving under the influence of intoxicants, ORS 813.011, and unlawful possession of methamphetamine, ORS 475.894(2)(b).[1] In two unpreserved assignments of error, defendant contends that the trial court plainly erred first, by giving Uniform Criminal Jury Instruction (UCrJI) 2710, which instructed the jury that it could convict if it found that defendant's blood alcohol content was equal to or greater than 0.08 percent by weight of alcohol, when the state's theory was based on defendant's impairment, and second, by sentencing him to a term of post-prison supervision (PPS) to follow a term of confinement that was imposed as a condition of probation. Defendant also advances arguments in a *pro se* supplemental reply brief. We affirm.

Because the parties are familiar with the undisputed background of the case, we do not provide an extended recitation of the facts for this nonprecedential memorandum opinion. At trial, the state offered evidence that defendant's blood alcohol content (BAC) was 0.04 percent one hour after the traffic stop and proceeded under a theory that defendant was impaired to a noticeable and perceptible degree as a result of the use of multiple intoxicants. The results of a urine analysis, which showed defendant testing positive for methamphetamine and cannabis metabolites, was also admitted into evidence. At the state's request and without defendant's objection, the trial court gave a uniform jury instruction that provided, in part, that a BAC of 0.08 percent or higher constitutes being under the influence of intoxicants.[2] It is not

---

[1] ORS 813.011 has been amended since the underlying conduct in this case. Or Laws 2023, ch 498, § 6. Because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

[2] The trial court gave UCrJI 2710 and 2711:

"[THE COURT:] Use of chemical analysis to show blood alcohol. If you find beyond a reasonable doubt that the amount of alcohol in [defendant's] blood at the time that [he] was driving a vehicle was equal or greater to .08 percent [by] weight of alcohol as shown by a chemical analysis of [his] breath or blood, this constitutes being under the influence of intoxicants.

"If you find the amount of alcohol in [defendant's] blood at the time that [he] was driving a vehicle was less than .08 percent by weight of alcohol as shown by a chemical analysis of [his] breath or blood, you may consider this with any other evidence in the case to determine if [he] was under the influence of intoxicants.

disputed that the jury instruction was an accurate statement of the law and that there was blood alcohol evidence in the record. On appeal, defendant argues that the trial court plainly erred in giving the uniform instruction because the evidence did not support it and because it was not part of the state's theory of the case. Defendant further asserts that the erroneous instruction was not harmless because it invited the jury to speculate about defendant's BAC at the time of driving. In light of the circumstances of this case, we do not exercise our discretion to reach this asserted error. *See State v. Wiltse*, 373 Or 1, 25, ___ P3d ___ (2024) (explaining that, "in most circumstances, giving jury instructions that have been jointly requested or requested by one party without objection is unlikely to lead to reversal on plain-error review").

To qualify for plain-error review under ORAP 5.45, an error must be (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record without requiring an appellate court to choose among competing inferences. *See, e.g.*, *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (outlining requirements of plain-error review). If the three parts of the plain-error test are met, then we must decide whether to exercise our discretion to review and correct the error and explain our reasons if we decide to correct the error. *Id.* at 630; *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (describing nonexclusive list of factors to consider when deciding whether to exercise discretion to correct a plain error). Here, even if the claimed error satisfies the three-part plain-error test, we would not exercise our discretion to correct the error because this is the type of error that could have easily been addressed by the trial court had it been properly raised when reviewing the jury instructions and because there is a plausible argument that there was a tactical choice in allowing the jury to be so instructed. *See, e.g.*, *State v. Inman*, 275 Or App 920, 935, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (explaining that "the ease with which any error could have been avoided or corrected

---

"Breath test evidence. It is up to you to determine what weight you will give to breath test evidence. You are not required to accept such evidence. You should give the breath test evidence such weight as you feel is appropriate in reaching your verdict."

should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error"); *State v. Miranda*, 309 Or 121, 127-28, 786 P2d 155, *cert den*, 498 US 879 (1990) (declining to reach claimed error that may have been the product of the defendant's tactical choice and explaining that the defense "may well have chosen this strategy to focus on false details in order to divert the jury's attention from the actual facts of the case"). Accordingly, we reject defendant's first assignment of error.

In his second assignment of error, defendant argues that the trial court plainly erred in sentencing him to a term of PPS because the court lacked the authority to impose PPS following a term of confinement that was imposed as a condition of a probationary sentence. Defendant's argument appears to assert that the court could have imposed PPS following only a prison-term sentence.

Defendant's crime of conviction carries a mandatory 90-day jail sentence under ORS 813.011(3). The trial court is required to impose a term of PPS "for any felony offender who is sentenced to the legal and physical custody of the Department [of Corrections] or to the supervisory authority." OAR 213-005-0002(1). Whether defendant was subject to the "physical custody of *** [a] supervisory authority" does not depend on whether the sentence was imposed as a standalone sentence or a sentence of probation that included a term of confinement as a condition of probation. Defendant relies on ORS 144.101(2) and ORS 144.104(1) in support of his argument; however, those statutes do not address the power of the sentencing court to impose a sentence. At a minimum, the significance of those statutes in this context is reasonably in dispute such that defendant's contention fails to meet the requirements for plain-error review. *See, e.g.*, *State v. Gallegos*, 302 Or App 145, 152, 460 P3d 529, *rev dismissed*, 366 Or 382 (2020) (explaining that the competing arguments offered by the defendant and the state demonstrate that the alleged error is not "obvious" and is reasonably in dispute, which has the effect of precluding plain-error review); *State v. Johnson*, 329 Or App 57, 63, 540 P3d 73 (2023) (explaining that the legal issue raised was

one of first impression that required an in-depth statutory analysis, which exceeded the bounds of plain-error review).

Finally, in a *pro se* supplemental reply brief, defendant challenges the evidence in the case, but does not assign error to any of the trial court's rulings. We have reviewed the pertinent portions of the evidentiary record and conclude that the reply brief does not supply a basis to reverse the trial court. *See, e.g.*, *State v. Murga*, 291 Or App 462, 468-69, 422 P3d 417 (2018) (explaining that we generally will not consider arguments raised for the first time in a reply brief); *Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) (explaining that we ordinarily "will decline to address an undeveloped argument").

Affirmed.